GEORGE W. BROWN *vs.* INHABITANTS OF WINTERPORT.

Penobscot. Opinion March 10, 1887.

*Towns. Note given by selectmen. Town meeting. Warrant.*

To entitle one to recover of the town money borrowed by a majority of the selectmen without prior express authority, for which a town note was given, the plaintiff must show that the money was paid into the town treasury, or applied to the payment of legal liabilities of the town, and that the town had ratified the action of the selectmen.

An article in a warrant for a town meeting, to see if the town would vote to pay a number of town notes, specifying each note by giving name of the payee, amount and date, is sufficient.

Where all the voters and officers of a town meeting by unanimous consent, but without a vote, go out into the open air, in front of the place of meeting, where they could more conveniently vote upon a proposition, and there vote without objection on the part of any person, the action is legal.

Where a town has in town meeting by vote ratified the doings of the selectmen in borrowing money and giving a note therefor, in behalf of the town it cannot at a subsequent meeting rescind such a ratification.

ON report.

The case is stated in the opinion.

*Barker, Vose and Barker,* for the plaintiff, cited : 21 Howard, 42 ; 51 Am. Rep. 88 ; 78 Ill. 170 ; 47 Miss. 24 ; 51 Miss. 305 ; 82 Penn. 297 ; 59 Am. Dec. 451 ; *Hodge* v. *Linn,* 100 Ill. ; 25 Alb. L. J. 37 ; *State* v. *Rogers,* 86 N. C. ; 26 Alb. L. J. 336 ; 4 Cowen, 297 ; 8 Cowen, 102 ; 20 Wend. 14 ; 3 Hill, 42 ; 5 Denio, 409 ; 20 Pick. 484 ; 7 Pick. 18 ; 116 Mass. 172 ; 122 Mass. 270 ; 40 Vt. 171 ; 41 Vt. 28, 418 ; *Hunneman* v.

*Grafton*, 10 Met. 454; 42 Vt. 485; 44 Vt. 87; 8 Mich. 100; *Lawrence* v. *Taylor*, 5 Hill, 107; Angell and Ames, Corp. 9 (ed.) § 304; 1 Potter, Corp. 211; 1 Dill. Mun. Corp. 385.

*W. H. Fogler*, for defendants.

The right of towns to grant or raise money, so as to bind the property of the inhabitants, or subject their persons to arrest for non-payment, is derived solely from statute. They have no authority to grant or raise money except for the purpose provided by the statute of the State. *Bussey* v. *Gilmore*, 3 Maine, 191; *Hooper* v. *Emery*, 14 Maine, 375; Opinion of the Justices, 52 Maine, 598; *Westbrook* v. *Deering*, 63 Maine, 231; *Lincoln* v. *Stockton*, 75 Maine, 145; *Luques* v. *Dresden*, 77 Maine, 186; *Stetson* v. *Kempton*, 13 Mass. 272; *Parsons* v. *Goshen*, 11 Pick. 396; *Anthony* v. *Adams*, 1 Met. 284; *Minot* v. *West Roxbury*, 112 Mass. 1; *Van Sicklen* v. *Burlington*, 27 Vt. 70.

A vote of a town to raise or pay money for any purpose not authorized by the statute is void. As stated in *Anthony* v. *Adams*, 2 Met. *supra*, 286, "For it is now well settled that a town, in its corporate capacity, will not be bound, even by the express vote of a majority, to the performance of contracts, or other legal duties, not coming within the scope of the objects and purposes for which they are incorporated."

The warrant calling a town meeting shall specify the place at which the meeting shall be had. R. S., c. 3, § 5.

The place appointed for holding this meeting was at Union hall basement. This means within the walls of said basement. It could not meet and organize at any other place. *Chamberlain* v. *Dover*, 13 Maine, 466; *Sherwin* v. *Bugbee*, 16 Vt. 439; Dillon's Municipal Corp. 3rd ed. 267.

Even if all the voters of the town assent to and are present at a place other than that at which the meeting is called, the doings will have no validity. *Moor* v. *Newfield*, 4 Maine, 44; *Jordan* v. *School Dist.* 38 Maine, 170; *Sherwin* v. *Bugbee*, 17 Vt. 337; Dillon, § 266, 7nd. ed.

Dillon § 269, says that the majority may adjourn to another place within the corporate limits "if fairly done."

In *Chamberlain* v. *Dover, supra,* it is said, "We do not say that they may not have the right to adjourn to another place. But there should be limitations to the exercise of such discretion. "The law is strictly held as to the important particulars of time and place." Dillon, § 267.

That a town may, at any time before the rights of third parties have intervened, lawfully rescind previous votes is too well settled to require argument. Dillon, § 290 and notes 2 and 3; *Hunneman* v. *Grafton,* 10 Met. 456; *Withington* v. *Harvard,* 8 Cush. 68; *Getchell* v. *Wells,* 55 Maine, 433; *B. & M. L. R. R. Co.* v. *Unity,* 62 Maine, 148.

A vote by a municipal or other corporation to ratify the unauthorized acts of its officers must be as explicit and clearly expressed as would be required in a vote granting previous authority to the officers to perform such acts. *Salem Bank* v. *Gloucester Bank,* 17 Mass. 28. The cases in which a vote of a town to pay or refund money has been held not revocable, are not applicable to the case at bar. The vote in that class of cases are, like that in *Nelson* v. *Milford,* 7 Pick. 18, to indemnify officers of the town, who acting illegally but in good faith, or like that in *Hall* v. *Holden,* 116 Mass. 172, to pay money which, through the acts of its agents, has been paid wrongfully into the treasury of the town.

If the plaintiff has the right under the vote to rely upon the original transaction between Arey and Ritchie and the lender of the money, and upon the disposition of the money borrowed, the facts disclosed by the testimony are not sufficient in law to render the town liable, even if the vote of December 6, shall be regarded as a ratification of the act of the selectmen in borrowing the money. Assuming that the parties to that transaction have testified truthfully in relation thereto, it appears that the mining company through Mr. Fernald, its treasurer, loaned to Arey and Ritchie, the selectmen of the defendant town, the sum of $550, upon the supposed credit of the town, but without the authority of the town. Such loan is the basis of the plaintiff's suit.

His case comes precisely within the decisions of several recent

cases in this state, in which the law applicable to such a state of facts has been so thoroughly discussed, and so explicitly, decidedly and deliberately stated by this court as to hardly require further discussion or citation of authorities. *Parsons* v. *Monmouth*, 70 Maine, 262 ; *Billings* v. *Monmouth*, 72 Maine, 174 ; *Belfast Nat. Bank* v. *Stockton*, 72 Maine, 522 ; *Lincoln* v. *Stockton*, 75 Maine, 141 ; *Otis* v. *Stockton*, 76 Maine, 506 ; *Atkinson* v. *Minot*, 75 Maine, 189.

"An absolute excess of authority by the officers of the corporation, in violation of law, cannot be upheld." Dillon, § 463.

"Transactions which are absolutely illegal or *ultra vires* cannot be ratified." Green's Brice's *Ultra Vires*, 550.

"No sort of ratification can make good an act without the scope of the corporate authority." *Peterson* v. *The Mayor*, 17 N. Y. 449.

EMERY, J. This action, though in the name of nominal assignee, Brown, is in fact brought by the Mineral Hill Mining Company, to recover of the town of Winterport, money alleged to have been loaned to the town by that company. Two of the three selectmen of the town, Arey, (chairman) and Ritchie, assuming to act in behalf of the town, borrowed of the plaintiff company $550 as for the town, and gave what purported to be a town note therefor, signed by them as selectmen. This was May 31, 1881.

This transaction alone of course does not imply a promise by the town to repay the money. To imply such a promise, the plaintiff must establish by evidence two other propositions of fact. 1. That the money so obtained was either paid into the town treasury or was applied in fact to the discharge of lawful liabilities of the town to that extent. 2d. That the town ratified the action of the selectmen in so borrowing and applying the money. *Lincoln* v. *Stockton*, 75 Maine, 141 ; *Otis* v. *Stockton*, 76 Maine, 506.

I. Ritchie, one of said selectmen, testified that all the money thus borrowed was at once used to pay off and take up outstanding town orders, previously given for and representing legal

liabilities of the town for ordinary municipal purposes, such as schools, streets, the poor, &c. He does not now profess to remember the dates, numbers, amounts, or payees of each, or many of these orders nor for what purpose each was given. He does state quite fully as to some of them. He testifies however, that all the orders were produced at the time by Mr. Arey, the chairman, that he and Mr. Arey examined them, that he was satisfied at the time of their authenticity, and that they were regularly issued for the usual municipal purposes,— that they were recorded with dates, numbers and amounts, &c., upon the book used by the town officers to record paid town orders. The amount was $553. He says that after being thus recorded, they were cancelled on the spot by burning. The book was left with Arey, the chairman, and it is claimed it was afterward burned in the fire that consumed Arey's store.

Ritchie further testifies, that a list or memorandum of all these orders was read to the town meeting held Dec. 6 1884, a meeting called to consider the question of re-paying this money and which voted to do so. Mr. Ritchie is not contradicted, and although the evidence is not wholly satisfactory, and is not so clear and full as we could wish, we think it fairly sustains the proposition, that the money was in fact applied to the discharge of the town's legal indebtedness to that extent.

Mr. Arey was the holder of these orders, and the defendants urged, that the money could not lawfully be applied to the orders held by him, as he was, (as the defendants say) indebted to the town at the time, in a much larger sum ; indebted not simply as a debtor, but as a town officer for money of the town wrongfully appropriated to his own use. Much evidence is in the case upon this question of Arey's indebtedness to the town. We do not think it matters, whether and how he was indebted. The plaintiff, in the absence of fraud, (and no fraud upon his part is suggested,) would not be affected by the state of the accounts between Arey and the town. If Arey was indebted to the town even for the money wrongfully appropriated, the town was also indebted to him. Each indebtedness. was distinct, and of a different nature. Each was outstand-

ing. Neither had been applied toward liquidating the other. He was the holder of certain audited claims against the town, and the plaintiff's money extinguished them. The town thus had the benefit of the money.

II. Two of the selectmen for the year 1884, gave the plaintiff company a town order for $618.13, dated July 7, 1884, to take up the original note, that sum being the amount with interest. They afterward called a town meeting, to see if the town would vote to pay this order among others. At this meeting held Dec. 6, 1884, it was voted that the treasurer hire money to pay the various notes and orders named in the warrant, including the order to the plaintiff company. This official vote, if valid, would seem to be an effectual ratification of the act of the selectmen in borrowing the money and giving the town order.

The defendants contend that the article in the warrant was too indefinite and general to authorize such a vote. Instead of a separate article for each note or order to be submitted to the town, there was one article naming distinctly and separately all the notes and orders to be acted upon. This particular order was named in the article by date, amount and name of payee. We think the warrant gave a notice sufficiently specific.

The defendants further contend that the vote was illegal, for the reason that it was not passed within the walls of the room named in the warrant as "Union Hall basement;" but was passed just outside, in the open air, in front of the building. It seems there was by reason of the crowd, considerable difficulty in ascertaining the will of the meeting, while within the room, and calls were made from the floor that the division be had outside the building. These suggestions seem to have met with general approval and no opposition. The people at once all passed out of doors, the moderator and clerk with them. The meeting then divided, and the count was made in the open air close to the building. There was no formal adjournment from the room to the open air, but what was done, seems to have been done spontaneously and by unanimous consent. There was no abridgement of freedom of speech, or of vote. No person was misled. No person was prejudiced. The effort was to obtain greater freedom, and more certain expression of the real will of

the meeting. The act complained of now, was not complained of then. It was not the omission of any necessary step in the procedure, nor the interpolation of any illegal restrictive step, but simply the well doing outside the walls, what could not have been well done inside the walls. It is a maxim of parliamentary law that anything, as to the mode of action, may be done by unanimous consent.

It will be seen upon a careful examination of the cases cited by the defendants to this point, that they do not conflict with our reasoning. In those cases it appeared that some persons' rights were abridged, or that the meeting itself was unauthorized. The following authorities cited by the plaintiff sustain the vote *Dole* v. *Irwin*, 78 Ill. 170 ; *People* v. *Kniffin*, 21 How. Pr. 42.

The defendants again claim, that if we find there was a valid ratification, it was effectually rescinded by a subsequent vote at a legal meeting, Aug. 15, 1885, passed before the treasurer had obeyed the former vote. The act ratified however was the borrowing the plaintiff's money by the then selectmen. That act had been done. The vote of ratification at once applied to the act, and adopted it as the act of the town. The act was then as binding on the town, as if the vote were prior in time to the act. It was then the town's act. The town had borrowed the plaintiff's money. A ratification after the act is as potent as authority before the act. The act is equally binding upon the principal in either case, and in neither case can the principal, after the act, relieve himself by a simple declaration of his change of mind. The cases cited by the defendants do not hold to the contrary.

We think the evidence fairly establishes the propositions : that the money was borrowed for the town,— that it was used by the town in payment of proper municipal charges,— that the town has ratified the borrowing, and has ratified the giving the order declared upon.    *Judgment for plaintiff for $618.13, with interest from December 9, 1884, the date of demand.*

PETERS, C. J., WALTON, VIRGIN and HASKELL, JJ., concurred. LIBBEY, J., concurred in the result.